**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ADVANCED MULTILEVEL CONCEPTS, INC., ABLE DIRECT MARKETING, INC., ESTHETICS WORLD, INC., and INTERNATIONAL BUSINESS DEVELOPMENT, INC.** <br><br> **Plaintiffs,** <br><br> **v.** <br><br> **EDWARD BUKSTEL, VITAMINSPICE, INC., RICHARD F. SEELIG, and DOES 1 through 30, inclusive,** <br> **Defendants.** <br><br> **EDWARD BUKSTEL and VITAMINSPICE, INC.,** <br> **Counter-Plaintiffs,** <br><br> **v.** <br><br> **ADVANCED MULTILEVEL CONCEPTS, INC., ABLE DIRECT MARKETING, INC., and ESTHETICS WORLD, INC.,** <br> **Counter-Defendants.** <br><br> **And** <br><br> **JEHU HAND,** <br> **Third-Party Defendant.** | **CIVIL ACTION NO. 11-3718** |

Baylson, J.                                             January 25, 2013

**MEMORANDUM RE: MOTIONS TO DISMISS DEFENDANTS' AMENDED**
**COUNTERCLAIMS AND THIRD-PARTY CLAIMS**

I. **INTRODUCTION**

The unique question presented in this securities fraud case is whether a violation of

Section 10(b) of the Securities Exchange Act and Rule 10b(5) can be committed by officers of a

corporation, not by their misrepresentations to investors in connection with the sale of the corporation's shares, as is usually alleged, but by a scheme centered around manipulating the restricted nature of the company's shares under SEC Rule 144, 17 C.F.R. § 230.144(i), in order to gain control over the stock's "float" and enrich themselves at the detriment of the corporation.

From the pleadings, the battle of allegations between Plaintiffs and Defendants reveal disputes about sinister intent and financial motive, as well as possibly innocent acts and statements, that might serve well as the plot of an opera, perhaps not as deep or threatening as the intrigues between King Phillip II of Spain and his son, Don Carlos, over the fate of Flanders in the Sixteenth Century in Verdi's opera. But the plot of an opera can be resolved by the librettist in three of four hours; this case, seventeen months ongoing and still at the stage of pleadings, must move into the second stage, of discovery, and hopefully for a shorter period.

As the Court previously denied the Defendant's Motion to Dismiss the Complaint (ECF 8) by Order of August 27, 2012 (ECF 38), the Court must now also deny Plaintiffs' and Third-Party Jehu Hand's Motions to Dismiss Defendants' Amended Counterclaims and Third-Party Claims.  (ECF 50 & 51). The Court concludes that the Supreme Court's broad holdings enforcing Section 10(b) and Rule 10b(5) in prior cases extends to a manipulative scheme by an officer of a corporation to gain control the stock's float, artificially inflate its share price through fraud on the market, and reap substantial gains by selling off his shares while causing the corporation and its other shareholders to suffer losses.

## II.   FACTUAL & PROCEDURAL BACKGROUND

### A.  Factual Background per Allegations of Complaint, Amended Counterclaims and Third-Party Claims

1.      Edward Bukstel started VitaminSpice, LLC in 2008, in Pennsylvania.  He raised money from local investors to develop a new commercial product, vitamin-infused spices.  In 2009, he desired to take the LLC public. (Complaint ¶ 14-15).

2.      Bukstel began discussions with Jehu Hand, a securities lawyer in California, in the summer of 2009.  Bukstel was interested in consummating a reverse merger with Qualsec LLC, a company owned by Hand's brother, Learned Hand.  At the time of the reverse merger, Plaintiffs Able Direct Marketing, Inc. ("Able") and Esthetics World, Inc. ("Esthetics"), were part of a group of noteholders in Qualsec, to whom the corporation owed $130,000. (Id. ¶ 16-17).

3.      In August 2009, Bukstel travelled to California to meet with Jehu and Learned Hand, to discuss the reverse-merger. (Id. ¶ 18).  It was agreed the merger would go forwards.  Also during this trip, Qualsec shareholders and noteholders agreed to convert their debt in Qualsec into post-merger equity in Vitaminspice. (Id. ¶ 19).

4.      On September 28, 2009, the reverse-merger was consummated.  (Amended Counterclaims ¶ 17). There were 121 million new shares of VitaminSpice acquired – 21 million shares acquired by the Qualsec shareholders and noteholders, and 100 million shares acquired by VitaminSpice investors, including Bukstel and Plaintiff International Business Development, Inc. ("IDB").   (Complaint ¶ 23). Plaintiff Advanced Multilevel Concepts, Inc. ("Advanced") acquired its shares in VitaminSpice from shareholders in the Qualsec group. (Id.). The public company was renamed VitaminSpice and VitaminSpice, LLC became the wholly-owned subsidiary. (Id.).

5.      Also on September 28, 2009 Hand allegedly issued a false "Corporate Resolution" of the Qualsec investors; sent an "Opinion Letter" to a transfer agent, Stalt, Inc.,

stating falsely that VitaminSpice was not and never had been a shell company; and signed another allegedly false "Seller's Representation Letter." (Amended Counterclaims ¶¶ 17-20, 24).

6.      At some point throughout these transactions, Jehu Hand became in-house counsel of VitaminSpice.  (See id. ¶ 10).

7.      In January 2010, Hand allegedly commissioned the publication of two press releases about VitaminSpice, containing false information. The press releases inflated the company's share price. From January 14, 2010 through February 1, 2010, Hand allegedly engaged in massive sales and purchases of VitaminSpice shares through a "pump and dump" scheme. (Id. ¶¶ 48-52).

8.      On March 24, 2010, Hand sent an email to Bukstel and the VitaminSpice Board of Directors, advising them that under [SEC] Rule 144(i), "if the company was a 'shell' at any time in its history (as this company was for about two months prior to the merger) . . . the restricted shares issued on the merger cannot use Rule 144 until 1 year after the form 10 . . . has been filed." (Id. ¶ 30). In other words, Hand related that because VitaminSpice had been a shell prior to the merger, Rule 144(i) prevented legitimate VitaminSpice shareholders from trading their shares. This both stopped VitaminSpice investors from trading their shares, and dissuaded the VitaminSpice Board from issuing additional shares, which would have reduced the float controlled by Hand. (Id.  ¶ 29). Allegedly, Hand was transmitting this information at the same time he was orchestrating his scheme to flood the market with free trading shares issued in the name of his shell companies, relatives, friends, and fictional persons. (Id. ¶ 30).

10.     In May 2010, Hand allegedly engaged in another pump-and-dump operation, involving the commission and publication of false press releases. (Id. ¶¶ 54-55).

11.    On July 5, 2010, Hand reported to VitaminSpice's Board of Directors that Bukstel had been derelict in his duties as CEO – after months of allegedly observing that Bukstel had merged company accounts with his personal accounts, had failed to impose internal controls, and had failed to file reports in a timely fashion, Hand brought this information to the Board of Directors. (Complaint ¶¶ 25-35).

12.    On July 6, 2010, Hand was terminated as VitaminSpice's counsel. (Id. ¶ 36).

13.    On July 12, 2010, Bukstel imposed a "stop order" on the shares held by Plaintiffs (e.g., Advanced, Able, Esthetics, and IDB) by directing Stalt, the transfer agent, not to allow their shares to be traded.  (Id. ¶¶ 37, 40).

14.    In August 2010, Bukstel allegedly caused VitaminSpice to issue 7.32 backdated shares of VitaminSpice stock to Bukstel's "confederates," for no consideration to the company. (Id. ¶ 59). This diluted the value of Plaintiffs' holdings in VitaminSpice. (Id. ¶ 74).

15.    At the conclusion of the Complaint, and the Amended Counterclaims and Third-Party Claims, these pleadings relate the injuries suffered by the respective parties, including damages and other matters, and seek recovery from the opposing party or parties.

**B.   Procedural Background**

On June 8, 2011, Plaintiffs, investors in VitaminSpice, Inc.,[1] filed this case against VitaminSpice, its CEO Edward Bukstel, its director Dr. Richard Seelig, and Does 1-30, for breach of the U.C.C., conversion, breach of the duty of care, breach of the duty of loyalty, and securities fraud. (ECF 1).   Most of the causes of action named VitaminSpice and Bukstel. Plaintiffs alleged Bukstel "initiated a systematic effort to block Plaintiff shareholders from

---

[1] The original Plaintiffs in this action were the corporations Advanced, Able, Esthetics, IDB, and two individuals, Ken Nail and Irv Pyun. (ECF 1).  Ken Nail and Irv Pyun filed a motion for voluntary dismissal on December 10, 2012. (ECF 63). The motion was granted and their claims were dismissed without prejudice. (ECF 64)/

selling their holdings" in VitaminSpice, thereby harming Plaintiffs when the price at which the shares were trading subsequently plummeted. (Id. ¶¶ 37-39, 46-47). They contended Bukstel fraudulently issued 7.32 million backdated shares of company stock "to his confederates for no consideration to the Company," to inflate the trading price. (Id. ¶¶ 58-59). This diluted Plaintiffs' holdings in the company by 5% (id. ¶ 66), and also enabled Bukstel's "confederates" to sell their shares into the market at artificial prices and "thereby r[eap] illicit gains at the expense of Plaintiffs and the investing public" (id. ¶ 60).

On July 22, 2011, Bukstel and VitaminSpice filed an Answer, Affirmative Defenses, Counterclaims, and Third-Party Claim, with the third-party being Jehu Hand, VitaminSpice's former counsel. (ECF 9).[2] In brief, the Counterclaims and Third-Party Claim alleged that Plaintiffs and Hand violated Section 10(b) of the Securities Exchange Act and Rule 10b(5), and that Plaintiffs and Hand committed common law fraud, negligent misrepresentation, and breach of fiduciary duty, when they misrepresented to Bukstel and VitaminSpice at the time of the reverse-merger that Plaintiffs were bonafide independent corporations, whereas they were in fact "shell companies" and "alter-egos" controlled by Hand. (Id. ¶¶ 13, 16-25). Additionally, the Counterclaims alleged Hand committed securities fraud and common law fraud when he managed to gain control of "a substantial part of the float of VitaminSpice shares" through his command over Plaintiffs, and used that control to make trades that enriched himself and harmed Defendants. (Id. ¶¶ 24-37). On August 11 and September 2, 2011, Plaintiffs and Third-Party Defendant Hand filed Motions to Dismiss Defendants' Counterclaims and Third-Party Claim for Failure to State a Claim Upon Which Relief Can be Granted. (ECF 16 & 25).

---

[2] Defendants' Counterclaims were filed against Plaintiffs/Counter-Defendants Advanced, Able, Esthetics, and IDB. (ECF 9). The Amended Counterclaims, presently under consideration, no longer list IDB as a Counter-Defendant. (ECF 47).

Defendants simultaneously filed a Motion to Dismiss the Complaint or Disqualify Plaintiffs' Counsel for Attorney Misconduct. (ECF 8). They contended Hand, who was currently serving as counsel for Plaintiffs, had filed the case against his former client, VitaminSpice, in violation of established duties of professional conduct. As a result, the entire case should be dismissed or Hand should be removed as Plaintiffs' counsel. (Id. ¶ 1). Plaintiffs filed a Response on August 5, 2011. (ECF 14).

On September 2, 2011, Plaintiffs filed a Notice of Removal to Bankruptcy Court, pursuant to 28 U.S.C. §§ 1452(a) & 1334(b). (ECF 26).  The Court issued an Order on September 13, 2011, staying all proceedings and placing the case in civil suspense, pending the outcome in Bankruptcy Court. (ECF 28).

The case was taken out of civil suspense on April 20, 2012, after the Bankruptcy Court dismissed it for various reasons not pertinent here.  By July 31, 2012, Hand was no longer counsel to Plaintiffs – they had retained new counsel, Peter Sheridan, Esquire. (ECF 35). Accordingly, this Court entered an Order dated August 27, 2012 (ECF 38), denying Defendants' Motion to Dismiss the Complaint or Disqualify Plaintiffs' Counsel (ECF 8).

The Court also required the parties to begin conferring on discovery matters.  It issued a Scheduling Order, directing Defendants to respond to Plaintiffs' and Hand's Motions to Dismiss the Counterclaims and Third-Party Claims, and setting a date for oral argument. (ECF 37). Defendants filed a Response on September 4, 2012. (ECF 39) and Plaintiffs filed a Reply on September 14, 2012. (ECF 40)  Oral argument was held on September 20, 2012. (ECF 43).

 At the argument, the Court noted the Counterclaims lacked allegations of specific purchases or sales of securities by Plaintiffs and Hand which caused losses to Defendants, and

that such allegations are necessary in order to plead a claim under Section 10(b) of the Securities Exchange Act with sufficient particularity. (Id.).  The Court issued an Order granting the motion to dismiss the Counterclaims without prejudice, entitling Defendants the opportunity to file amended counterclaims and third-party claims. (ECF 44).

On October 11, 2012, Defendants Bukstel and VitaminSpice filed Amended Counterclaims and Third-Party Claims, with the third-party claims again being filed against Hand, former attorney for VitaminSpice. (ECF 46 & 47). Defendants included seven causes of action against Plaintiffs and Hand in the amended pleading, alleging: federal securities fraud in violation of Section 10(b) of the Securities Exchange Act and Rule 10b(5) (Counts I, II, III and IV), common law fraud (Count V), negligent misrepresentation (Count VI), and breach of fiduciary duty (Count VIII).  The Amended Counterclaims, like the original Counterclaims, averred that Plaintiffs and Hand misled Bukstel and VitaminSpice at the time of the reverse-merger by concealing Hand's true control and command over Plaintiffs. (ECF 46, ¶¶ 87-93). The Counterclaims also specified in greater detail how Hand allegedly gained control over the float of VitaminSpice's shares, by making misleading and contradictory representations to VitaminSpice investors, its Board of Directors, and its transfer agent. (Id. ¶¶ 29-31). According to Defendants, Hand told "legitimate VitaminSpice investors" they were restricted from trading their shares pursuant to SEC Rule 144(i) while he told the transfer agent the exact opposite information; this enabled him to gain control over VitaminSpice's float by freely trading the shares held by Plaintiffs. (Id. ¶¶ 29-31, 36-41). Finally, the Counterclaims also detail "pump-and-dump" schemes orchestrated by Hand, during which he would release false information

about VitaminSpice to the market and drive up its share price, and then sell off the shares he controlled and reap substantial gains. (Id. ¶¶ 48-52, 54-56).

On October 25 and November 1, 2012, Plaintiffs and Hand each filed Motions to Dismiss, contending Defendants failed to state a claim for their first six causes of action. (ECF 50 & 52). Plaintiffs and Hand each attached new exhibits to their filings.[3] Defendants filed a Response on November 8, 2012 (ECF 54), and Plaintiffs and Hand filed Replies on November 15 and November 19, 2012 (ECF 57 & 59).

## III.   LEGAL STANDARDS

### A.   Motions to Dismiss Under Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual allegations that "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A complaint will satisfy this threshold test for facial plausibility if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Additionally, when the facts alleged equally support an "obvious alternative explanation" for what transpired, the plaintiff will not cross the plausibility threshold. Id. at 1951-52.   "A

---

[3] The new exhibits submitted by Plaintiffs were:  the Agreement and Plan of Reorganization, entered into by VitaminSpice in September 2009 (Exhibit 1);  a Marketwire article, published on November 8, 2010, about VitaminSpice's consummation of a transaction that will bring its product into new retail stores (Exhibit 2); VitaminSpice's balance sheet, as of September 30, 2011 (Exhibit 3); a press release by VitaminSpice, published on November 15, 2010 (Exhibit 4); a "Statement of Operations" of VitaminSpice, as of September 30, 2011 (Exhibit 5); a press release by VitaminSpice, published on November 17, 2010 (Exhibit 6); a Marketwire article, published on March 9, 2011, reporting that VitaminSpice relieved a $5 million order for its products (Exhibit 7); a Complaint filed by Advanced, Able and Esthetics against VitaminSpice, on November 9, 2010, in the Superior Court for the State of California (Exhibit 8); and an audit report by the Blackwing Group of Qualsec, as of December 31, 2008 (Exhibit 9).  (See ECF 50).  Hand attached an identical set of exhibits to his Motion to Dismiss. (See ECF 52).

complaint which pleads facts 'merely consistent with a defendant's liability, [] stops short of the line between possibility and plausibility of entitlement to relief.'" Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) (quoting Iqbal, 556 U.S. at 678).

When presented with a motion to dismiss under Rule 12(b)(6), a district court should conduct a two part analysis.  First, it should separate the factual and legal elements of a claim and accept all of the well-pleaded facts as true. Erickson v. Pardus, 551 U.S. 89, 94 (2007). Second, the court should determine whether the factual allegations are sufficient to show that the plaintiff has a "plausible claim for relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). See generally Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (holding that in reviewing Rule 12(b)(6) motions to dismiss, the court first "review[s] the complaint to strike conclusory allegations" and then evaluates whether the "well-pleaded components of the complaint" establish "the elements of the claim").

When parties attach new factual averments to a Motion to Dismiss under Rule 12(b)(6), this may have the effect of converting the motion to one for summary judgment.  Fed. R. Civ. P. 12(d) provides: "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." However, Rule 12(d) is not triggered for undisputedly authentic documents on which the plaintiff's claims are based. Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.); see also U.S. Express Lines, Ltd. v. Higgins,

281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.").

The exhibits, attached by Plaintiffs to their motion to dismiss the amended counterclaims, are described in FN 3. However, the Court will not consider the contents of these exhibits at this time. Accordingly, disposition of this motion proceeds under Rule 12(b)(6) rather than 12(d).

### B.    Pleading Standards for Fraud Cases

Fed. R. Civ. P. 9(b) imposes a "heightened pleading standar[d]" on plaintiffs bringing a cause of action for fraud. See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 347 n.50 (3d Cir. 2010). The Rule provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  To comply with Rule 9(b), a plaintiff must "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." Coffey v. Foamex L.P., 2 F.3d 157, 161-62 (6th Cir. 1993). Rule 9(b) applies to "*all* claims based on fraud," including claims that arise under statutes but involve the commission of fraudulent activity. See In re Ins. Brokerage Antitrust Litig., 618 F.3d at 347 (internal quotation marks and citation omitted) (holding Rule 9(b) applied in an action brought under the Sherman Act).

### C.   Elements of the Causes of Action in the Amended Counterclaims and Third-Party Claims

The Amended Counterclaims and Third-Party Claims charge Plaintiffs and Hand with committing: (1) federal securities fraud; (2) common law fraud; (3) negligent misrepresentation;

and (4) breach of fiduciary duty.  Defendants included four causes of action related to securities fraud, contending Plaintiffs and Hand ran afoul of Section 10(b) of the Securities Exchange Act and Rule 10b(5) by making false statements to secure free trading shares (Count I), by exerting undisclosed control over the Plaintiff-companies (Count II), by engaging in pump and dump schemes (Count III), and by controlling the "float" of VitaminSpice's securities to make unlawful stock sales (Count IV).  Defendants moved to dismiss the causes of action for securities fraud, common law fraud, and negligent representation. The elements of those causes of action are set forth below.

### 1.  Securities Fraud

Section 10(b) of the Securities Exchange Act of 1934 and its corresponding regulations prohibit fraud in connection with the sale or purchase of securities. See 15 U.S.C. § 78j(b);  17 C.F.R. § 240.10b-5(b).    Section 10(b) of the Securities Exchange Act outlaws the "use or employ[ment of] . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe," "in connection with the purchase or sale of any security." 15 U.S.C. § 78j.  Rule 10(b)-5, promulgated by the SEC pursuant to Section 10(b) of the Act, provides: "It shall be unlawful for any person . . . [t]o make any untrue statement of a material fact or to omit to state a material fact . . . in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5(b).

To pursue a private right of action under Section 10(b) of the Securities Exchange Act or under Rule 10b(5), a plaintiff must allege: (1) a material misrepresentation or omission; (2) made with scienter; (3) in connection with the purchase or sale of a security; (4) reliance on the misrepresentation or omission; (5) economic loss; and (6) a causal connection between the

material misrepresentation or omission and the loss. See In re Aetna, Inc. Sec. Litig., 617 F.3d 272, 277 (3d Cir. 2010). Additionally, the Private Securities Litigation Reform Act of 1996 (PSLRA), 109 Stat. 737, "imposes two exacting and distinct pleading requirements for securities fraud actions." In re Aetna, 617 F.3d at 277.  First, the PSLRA requires a complaint to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1).  Second, a complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the requirement state of mind." Id. § 78u-4(b)(2).

If a plaintiff fails to allege one of the six elements of federal securities fraud in his or her complaint, or fails to allege with specificity the material misrepresentation or scienter element, dismissal under Rule 12(b)(6) is proper. Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 346 (2005) ("Our holding about plaintiffs' need to prove proximate causation and economic loss leads us also to conclude that the plaintiffs' complaint here failed adequately to allege these requirements."); Barnard v. Verizon Commc'ns, Inc., 451 Fed. Appx. 80, 85 (3d Cir. 2011) ("The second amended complaint also contains no allegations from which reliance and economic loss can be established because there is no indication as to how, when, or why Appellants purchased or sold Idearc stock. There is thus no way to ascertain how any misrepresentation or omission impacted Appellants' decisions to purchase or sell securities. Accordingly, the District Court appropriately dismissed Appellants' securities fraud claim.").

## 2.  Common Law Fraud

The elements of a cause of action for common law fraud under Pennsylvania law are: (1) a representation; (2) material to the transaction at hand; (3) made falsely, with knowledge as to its falsity or recklessness as to whether it is false or true; (4) with the intent of misleading another; (5) justifiable reliance on the misrepresentation; and (6) injury that was proximately caused by the reliance. Bortz v. Noon, 729 A.2d 555, 499 (Pa. 1999); Gibbs v. Ernst, 647 A.2d 882, 889 (Pa. 1994).   A plaintiff must plead each element with particularity to state a viable claim to fraud.   E.g. Huddleston v. Infertility Ctr. of Am., Inc., 700 A.2d 453, 461 (Pa. Super. 1997).

### 3.   Negligent Misrepresentation

The elements of a cause of action for negligent misrepresentation under Pennsylvania law are: (1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresented ought to have known of the falsity; (3) which an intent to induct another to act; and (4) which results in an injury to a party acting in justifiable reliance on the misrepresentation. Bortz, 729 A.2d at 500.   "The elements of negligence misrepresentation differ from intentional misrepresentation [i.e., common law fraud] in that the misrepresentation must concern a material fact and the speaker need not know his or her words are untrue, but must have failed to make a reasonable investigation of the truth of these words. Moreover, like in any action in negligence, there must be an existence of a duty owed by one party to another." Id. at 501.

## IV.   THE PARTIES' CONTENTIONS

### A.        Securities Fraud Claims

Plaintiffs move to dismiss the four causes of action in Defendants' Amended Counterclaims related to securities fraud because they contend Defendants pleaded "none" of the

six elements of a private right of action under Section 10(b) and Rule 10b(5) with sufficient particularity. The "most obvious" deficiencies, Plaintiffs assert, are the failure to plead reliance, a connection between the misrepresentations and the purchase or sale of a security, and loss causation. (Plaintiffs' Motion to Dismiss Counterclaims, at 12) (ECF 50).

As to reliance, Plaintiffs highlight two shortcomings in the amended pleadings. First, they note that Defendants mention only one purchase or sale of a security in the Amended Counterclaims: the purchase by Edward Bukstel of shares of VitaminSpice stock on September 28, 2009. Accordingly, all securities fraud claims related to conduct by Hand after September 28, 2009 must be dismissed, Plaintiffs argue, because Defendants cannot possibly plead reliance during a time when they undertook no securities transactions.

Second, Plaintiffs contend that reliance on Hand's misrepresentations, even for Bukstel's September 28, 2009 transaction, was not alleged. The Amended Counterclaims do refer to misstatements by Hand made on or prior to September 28, 2009 – e.g., Hand's forging of a Corporate Resolution by the Board of Directors at Qualsec, Hand's false representations in an Opinion Letter to the transfer agent, Stalt – but the pleadings also state that neither Bukstel nor VitaminSpice were aware of these misstatements. (See Amended Counterclaims, ¶¶ 17, 20) (ECF 46) (stating Hand's execution of the Corporate Resolution was "unbeknownst to VitaminSpice and Bukstel" and "[n]either VitaminSpice nor Bukstel were aware of the false 'Opinion Letter' to Stalt").

Defendants cannot plead reliance by Bukstel, Plaintiffs argue, if they simultaneously disavow that Bukstel was aware of Hand's misrepresentations. Accordingly, all securities fraud claims, both those pertaining to pre-September 28, 2009 conduct and post-September 28, 2009

conduct, should be dismissed, because Defendants have not pled reliance on any act or omission

by Hand during those times in their undertaking of a security transaction.[4]

As to the "connection" element of a Section 10(b) or Rule 10b(5) claim, Plaintiffs argue

the amended pleadings are deficient as to their allegations that Hand committed securities fraud

when he stated that VitaminSpice was not a shell company.  Count I charges Hand with violating

Section 10(b) and Rule 10b(5) when he told Stalt, the transfer agent, that VitaminSpice "is not –

and never was – a shell company."   (Amended Counterclaim ¶ 79) (ECF 46). Defendants

contend that this misstatement, made on multiple occasions, is what allowed Hand to freely trade

VitaminSpice shares in violation of SEC rules. (Id. ¶¶ 20, 39, 44, 78-79).  Plaintiffs nonetheless

argue for dismissal because they claim that even if Hand made false representations about

VitaminSpice's shell status, such were not statements "in connection with" the purchase or sale

of a security. The contend only statements related to the "value of the securities bought or sold"

are deemed to be "in connection" with the purchase or sale of a security and cite Bissell v.

Merrill Lynch & Co., 973 F. Supp. 237, 242 (S.D.N.Y. 1996), for support.

Third, Plaintiffs argue for dismissal of the securities fraud claims because they argue

Defendants failed to plead loss causation. "[E]ven drawing every reasonable inference in favor of

Counter Plaintiffs' exceedingly vague allegations, it remains virtually impossible to ascertain a

causal link between damages to Bukstel (none are alleged against the Company) and an act or

---

[4] Hand argues that Defendants did not plead reliance for Bukstel's Sep 28, 2009 transaction because the Amended Counterclaims contain no factual averments that Bukstel relied on representations about Qualsec or its shareholders when he decided to purchase VitaminSpice stock. Meanwhile, a clause in the reverse-merger agreement explicitly stated that no other representations except those in the agreement were considered. The agreement attached a schedule listing how 100 million shares of VitaminSpice shares would be allocated to new investors (including Bukstel and Plaintiff IDB), but there was no specification of how the remaining 21 million shares for the Qualsec investors would be allocated. Thus, Hand argues, the distribution of the 21 million shares issued to Qualsen was not something Bukstel, or anyone involved in the reverse-merged agreement, relied upon.

omission on the part of Counter Defendants." (Plaintiffs' Motion to Dismiss Counterclaims, at 17) (ECF 50).  The Amended Counterclaims describe an intricate stock manipulation scheme by Hand, whereby he gained control of a substantial portion of VitaminSpice's shares, released false information to the market about VitaminSpice's business prospects, and then sold Vitaminspice shares at inflated prices to reap substantial gains, causing VitaminSpice's share price to collapse shortly thereafter. But Plaintiffs argue no loss causation to VitaminSpice and Bukstel was properly averred because the diminution to VitaminSpice's stock price allegedly caused by Hand was not a "harm" to the Defendant company, but only to its investors. Additionally, they claim that because there is an equally likely, alternative explanation for any loss causation suffered by Bukstel when the share price fell, i.e., mismanagement by the company's directors, the pleadings are deficient under Iqbal. (Id. at 17-19).

### B.        Common Law Fraud and Negligent Misrepresentation Claims

Plaintiffs' arguments for dismissal of the common law fraud and negligent misrepresentation claims hinge on a failure to plead reliance – they contend Defendants did not aver how any of the alleged misrepresentations by Hand were relied upon by Bukstel or VitaminSpice in the sale or purchase of a security.

## V.   ANALYSIS

After careful consideration, the Court will deny Plaintiffs' Motions to Dismiss the Amended Counterclaims and Third-Party Claims.

### A.        Count I (Securities Fraud for False Statements to Secure Free-Trading Shares)

Although most of the statements made by Hand in order to "secure free-trading shares" of VitaminSpice were made to the transfer agent, Stalt, and so were relied upon by Stalt rather than

by Defendants, there are other allegations of misrepresentations made by Hand directly to Bukstel and to VitaminSpice which permitted Hand to gain control over the "float" of the stock once he had secured the free-trading shares. (<u>See</u> Amended Counterclaims ¶¶ 29-30). Further, the essence of Count I is that Hand perpetrated a broad scheme, on behalf of himself and Plaintiffs, to gain control of VitaminSpice's stock price by making false and fraudulent acts and representations. These misrepresentations were made to Stalt, to investors in the general market, to members of the Board of Directors, and to Bukstel, and together, they allegedly caused significant harm to Defendants. It is true, as this Court noted in its earlier Order of September 20, 2012, that the subject of Defendants' securities-fraud counterclaims and third-party claims against Plaintiffs and Hand are in fact securities Defendants themselves issued. The Court agrees this is a novel situation, but cannot necessarily conclude, on a Rule 12 motion considering the totality of allegations, construed in the light most favorable to Defendants, that it would be legally impossible for Defendants to satisfy a jury that this scheme entitles them to relief.

### B.     Counts II, III, IV (Remaining Securities Fraud Claims)

First, Count II alleges securities fraud in connection with Hand's misrepresentations of his control over Plaintiff-companies. The Amended Counterclaims aver that Hand "misrepresented to Bukstel and VitaminSpice that [the Qualsec noteholders and shareholders] were independent and viable entities," and that Bukstel and VitaminSpice "reasonably relied on the concealments and misrepresentations [when] . . . retaining Hand, agreeing to proceed with the reverse merger, [and] allowing Hand to engineer the various transactions in which Counter-Defendants secured their shares of VitaminSpice stock." (Amended Complaint, ¶¶ 87, 91-92). These allegations satisfy the pleading requirements under Rule 12(b)(6) and Rule 9(b) because

they describe a material misrepresentation by Hand (about the independence of the Qualsec investor group), undertaken with scienter, connected to the sale or purchase of a security (namely, connected to Bukstel's decision to purchase VitaminSpice shares at the reverse-merger transaction), relied upon by Defendant (namely, relied on by Bukstel), which caused an economic loss to Defendant (namely, which caused losses to Bukstel when VitaminSpice's share later collapsed). Had Bukstel known the truth about Hand's control of the Qualsec group, it is possible he would have decided not to purchase VitaminSpice stock in September 2009 – because he might not have wanted to invest in a company in which 17% of the outstanding shares were controlled by the same individual.

Although Plaintiffs are correct that Defendants disavowed Bukstel's knowledge of certain pre-September 2009 statements by Hand (paragraphs 17 and 20 of the Amended Counterclaims state that Bukstel and VitaminSpice had no knowledge of Hand's false Opinion Letter issued to Stalt or the false Corporate Resolution he drafted for the Qualsec group), reliance can be assumed when an individual withholds material information.  Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128, 153-54 (1978) (holding "if there is an omission of a material fact by one with a duty to disclose, the investor to whom the duty was owed need not provide specific proof of reliance").

Moreover, while the Court cannot cite a case where plaintiffs brought a Section 10(b) or Rule 10b(5) action on account of misstatements by an insider that were made to a future-CEO during a reverse-merger negotiation (and that influenced the CEO to buy shares in the company), the Supreme Court has held more generally that statements made during pre-merger negotiations are cognizable in Rule 10b(5) actions, when relied on by public shareholders.  Basic Inc. v.

Levinson, 485 U.S. 224, 236 (1988) ("We therefore find no valid justification for artificially excluding from the definition of materiality information concerning merger discussions, which would otherwise be considered significant to the trading decision of a reasonable investor, merely because agreement-in-principle as to price and structure has not yet been reached by the parties or their representatives.").

Count III charges Hand with securities fraud in connection with his "pump and dump" schemes. Defendants aver that Hand made "false statements and material omissions" in press releases "which were intended to – and did – artificially inflate the price of VitaminSpice stock." (Amended Counterclaims ¶ 96). "Hand then dumped the stock by unloading millions of shares over which he exercised control, causing the stock price to plummet far below the value at which Bukstel acquired the stock in connection with the reverse merger." (Id. ¶ 96).

Defendants have satisfied the pleading requirements for this Count because they have alleged a misrepresentation (Hand's commissioned press releases), made with scienter, in connection with the sale or purchase of a security (that is, the purchase of VitaminSpice shares by investors in the general market), relied on (that is, relied on by the general investors), and which caused losses to plaintiffs (that is, losses to Bukstel, when his share price plummeted after the pump-and-dump schemes were carried through, and arguably losses to the corporation, when its share price collapsed and market reputation fell). An issue is whether the "connection" and "reliance" elements of a Section 10(b) or Rule 10b(5) action can be satisfied when *entities other than the plaintiffs* (here, entities other than counter-plaintiffs Bukstel and VitaminSpice) are the ones who executed the purchases or sales of securities in reliance upon the defendant's misrepresentations. In the typical Section 10(b) or 10b(5) case, the plaintiff is the individual

who makes a stock purchase or sale in reliance on misleading or false statements by the defendant (usually the company or its Board of Directors). This case is unique, because the company and its CEO are counter-suing a third-party (Hand) for misrepresentations which induced *other* investors, in the general market, to buy and then sell off its stock. The key question is whether the "connection" and "reliance" elements can be satisfied when the securities transactions at issue were conducted by entities other than the plaintiff. The Court has not found any case law specifically confronting or resolving this question. It has, however, found case law suggesting the "in connection with" and "reliance" elements should not be read so narrowly as to preclude novel securities fraud actions that are consistent with the purpose of Section 10(b). United States v. O'Hagan, 521 U.S. 642 (1997) (holding the "in connection with" element is satisfied when an individual uses confidential information to purchase securities "even though the person or entity defrauded is not the other party to the trade, but is, instead, the source of the nonpublic information" because the defendant "deceives the source of the information and simultaneously harms members of the investing public" and "an animating purpose of the Exchange Act [is] to insure honest securities markets and thereby promote investor confidence"); Sante Fe Indus., Inc. v. Green, 430 U.S. 462, 473-74 (holding the controlling test for whether a complaint states a cause of action under Rule 10b(5) is whether "the conduct alleged can be fairly viewed as 'manipulative or deceptive'"); Superintendent of Ins. v. Bankers Life & Cas. Co., 404 U.S. 6, 12-13 (1971) (holding fraud "in connection with" a purchase or sale of securities has an expansive meaning and occurs as long as there is "an injury as a result of deceptive practices touching [the purchase or] sale of securities"). Assuming connection and reliance can be satisfied by proof of securities transactions by persons *other than* plaintiffs but

which nonetheless harm plaintiffs, who are buyers or issuers of securities, Count III is sufficiently averred: it describes a pump-and-dump scheme orchestrated by Hand, which caused VitaminSpice's share price to soar and then plummet when investors in the market made trades based upon his misrepresentations, and which caused losses to general investors as well as to Defendants who had earlier purchased and/or issued those securities. Cf. Blue Ship Stamps v. Major Drug Stores, 421 U.S. 723, 731 (1975) (holding "the plaintiff class for purposes of s 10(b) and Rule 10b-5 private damage actions is limited to purchasers and sellers of securities"). These factors may also satisfy the requirement of the loss causation. See In re Cigna Corp. Sec. Litig., 2005 WL 3536212 (E.D. Pa. Dec. 23, 2005).

Count IV alleges securities fraud by Hand through his control over the float of VitaminSpice's stock and his unlawful participation in stock sales. The Amended Counterclaim states: "Hand could and did manipulate the price of VitaminSpice stock by giving the false impression of an active market and artificially inflating the price thereof.  As alleged above, the drop in the price of VitaminSpice stock was caused by the winding down of the price-manipulation and pump-and-dump scheme engaged in by Hand." (Amended Counterclaim ¶ 105).  This cause of action substantively mirrors that in Count III, so again the Court must decide: can the "connection" and "reliance" elements of a Section 10(b) or Rule 10b(5) action be satisfied when the securities transactions at issue were performed by parties other than the plaintiffs (e.g., by investors in the general market), but nonetheless caused harm to the plaintiffs? Finding no authority either way, the Court holds in the affirmative, and sustains Count IV as it did for Count III.

**C.**　　　　**Counts V and VI (common law fraud and negligent misrepresentation)**

Defendants have pled sufficient facts to state claims of fraud and negligent misrepresentation by Hand during the negotiation and consummation of reverse merger agreement.  Defendants allege that Hand failed to disclose the truth about the Qualsec investors' identities. They claim he invented fake identities and addresses for directors in those companies, issued a fake Corporate Resolution of the Qualsec Board, and withheld information about his true control over those companies from Bukstel and VitaminSpice. (Amended Complaint ¶¶ 19, 20). Bukstel and VitaminSpice relied on Hand's misrepresentations in consummating the reverse merger on September 28, 2009, and both parties suffered losses (the company, to its share price and market value, and Bukstel, to his holdings in VitaminSpice) when Hand used his position of control over 17% of VitaminSpice's shares to consummate a pump and dump scheme.  These are sufficient allegations of common law fraud and negligent misrepresentation.

***

For the forgoing reasons, Defendant and Third-Party Hand's Motions to Dismiss the Amended Counterclaims and Third-Party Claims are denied. An appropriate Order follows.

O:\CIVIL 11\11-3718 Advanced Multilevel v Bukstel\11-3718.Memo on MTD Counterclaims- Final.doc