**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ADVANCED MULTILEVEL CONCEPTS, INC., ABLE DIRECT MARKETING, INC., ESTHETICS WORLD, INC., and INTERNATIONAL BUSINESS DEVELOPMENT, INC.**<br><br>                    **Plaintiffs,**<br><br>         **v.**<br><br>**EDWARD BUKSTEL, VITAMINSPICE, INC., RICHARD F. SEELIG, and DOES 1 through 30, inclusive,**<br>                    **Defendants.**<br><br>**EDWARD BUKSTEL and VITAMINSPICE, INC.,**<br>                    **Counter-Plaintiffs,**<br><br>         **v.**<br><br>**ADVANCED MULTILEVEL CONCEPTS, INC., ABLE DIRECT MARKETING, INC., and ESTHETICS WORLD, INC.,**<br>                    **Counter-Defendants.**<br><br>         **And**<br><br>**JEHU HAND,**<br>                    **Third-Party Defendant.** | **CIVIL ACTION NO. 11-3718** |

**MEMORANDUM RE: DEFENDANT/COUNTER-PLAINTIFF
EDWARD BUKSTEL'S MOTION FOR FRAUD ON THE COURT**

**Baylson, J.**                                         **December  8, 2014**

## I.      Introduction

All litigation must eventually end. Before the Court is Defendant/Counter-Plaintiff

Edward Bukstel's motion for relief under Rule 60 from the Court's May 23, 2013 Order

dismissing this action with prejudice because the parties reached a settlement agreement. At its

core, Bukstel's motion seeks to reopen this securities fraud litigation because, more than a year after the settlement, Bukstel finally reviewed documents that were available to him during discovery and he now regrets his decision to settle. As set out in this memorandum, Bukstel's motion does not adequately justify disturbing the settled resolution of this case.

## II.   Factual and Procedural Background

The Court set out the detailed factual and procedural history of this case in its January 25, 2013 memorandum regarding motions to dismiss defendants' amended counterclaims and third-party claims (ECF 67). In this memorandum the Court will restate and supplement that background only to the extent necessary for understanding and deciding the present motion.

Plaintiffs in this case are investors in the defendant company VitaminSpice, Inc., which was conceived and founded by defendant Edward Bukstel ("Bukstel").[1] Compl. ¶¶ 1-9 (ECF 1). In their June 8, 2011 complaint, plaintiffs alleged, among other counts, that Bukstel and VitaminSpice had committed conversion and securities fraud, and had unlawfully prevented plaintiffs from selling their VitaminSpice stock in violation of the Uniform Commercial Code (UCC). Id. ¶¶ 76-123. One of their core allegations was that Bukstel had improperly and fraudulently imposed "stop orders" that prevented plaintiffs from selling their shares. Id. ¶¶ 40-44, 48-50. Plaintiffs also alleged that VitaminSpice stock trading volume "exploded" from 64,700 on November 1, 2010 to 3,777,100 on November 2, 2010, and 4,425,200 on November 3, 2010, and that this heavy trading volume continued throughout November 2010. Id. ¶ 54. These trading volumes were allegedly related to a scheme by Bukstel to issue VitaminSpice stock to his

---

[1] To simplify terminology for purposes of this memorandum, the Court uses "plaintiffs" to refer to plaintiffs/counter-defendants Advanced Multilevel Concepts, Inc., Able Direct Marketing, Inc., Esthetics World, Inc., and International Business Development, Inc. Likewise, the Court uses "defendants" to refer to defendants/counter-plaintiffs Bukstel and VitaminSpice, Inc. As described below, "third-part defendant" refers to Jehu Hand.

unnamed confederates, "artificially inflate the trading price," and "reap[] illicit gains at the expense of Plaintiffs and the investing public." Id. ¶¶ 54-61.

Bukstel and VitaminSpice filed amended counterclaims on October 11, 2012 against the plaintiffs and against third-party defendant Jehu Hand ("Hand"), alleging four counts of securities fraud, and one count each of common law fraud, negligent misrepresentation, and breach of fiduciary duty. Am. Countercl. ¶¶ 76-125 (ECF 47). Bukstel and VitaminSpice alleged that Hand served as VitaminSpice's counsel and as a corporate officer,[2] and that the plaintiff companies Advanced Multilevel Concepts, Inc., Able Direct Marketing, Inc., Esthetics World, Inc., and International Business Development, Inc. are all Hand's "alter-egos." Am. Countercl. ¶¶ 3-7, 10-11, 64-75. They alleged that Hand had seized control of substantial amounts of VitaminSpice stock using the plaintiff companies, other companies, and various individuals who were all "fronts" for Hand. Id. ¶¶ 13-26. Among the persons and entities allegedly under Hand's control during this scheme were an individual named "Doris Urueta Toro" and a company called "Bio-Clean Products." Id. ¶¶ 17, 22, 25, 38. Bukstel and VitaminSpice further alleged that Hand had engaged in various fraudulent activities including: (1) misrepresenting to VitaminSpice's transfer agent that the VitaminSpice shares owned by investors under Hand's control were

---

[2] Plaintiffs' original complaint identified Hand as a securities lawyer who had a role in setting up the reverse merger transaction that allowed VitaminSpice to become a publicly traded company and later served as "corporate counsel" and "bookkeeper" for VitaminSpice until Bukstel terminated him on July 6, 2010. Compl. ¶¶ 16-18, 24-36. The amended counterclaims alleged that Hand served as counsel to VitaminSpice and as an officer of VitaminSpice. Am. Countercl. ¶¶ 10-11. After Bukstel and VitaminSpice filed a motion to dismiss the complaint alleging that Hand's involvement with the plaintiff companies created a conflict of interest and that Hand had disclosed VitaminSpice's attorney-client privileged information (ECF 8), Hand filed a declaration attesting that he was employed as VitaminSpice's "internal bookkeeper," did not represent VitaminSpice during its reverse merger, and "was never an officer" of VitaminSpice. Decl. of Jehu Hand, ¶¶ 3-4 (ECF 18). Hand's most recent filing continues to assert that he served only as VitaminSpice's bookkeeper. Hand's Resp. to FRCP 60(B)(3) Mot., at 10-11 (ECF 110). Hand's precise role with VitaminSpice has not been adjudicated and the Court will not decide that question here.

allowed to be free-trading under Securities and Exchange Commission rules while making contrary statements to Bukstel and "legitimate" investors, id. ¶¶ 20, 26-27, 29-31; (2) forging corporate documents, id. ¶¶ 35-38; and (3) engaging in "pump-and-dump" schemes that artificially inflated the price of VitaminSpice's stock using false and misleading press releases and allowed Hand and his confederates to profit by selling off VitaminSpice shares at the inflated price, id. ¶¶ 42-57.

The Court denied plaintiffs' and Hand's motions to dismiss the amended counterclaims on January 25, 2013 (ECF 68). On March 8, 2013, plaintiffs filed a motion for partial summary judgment on liability as to their claim for violations of the UCC in connection with the stop orders that prevented plaintiffs from selling their VitaminSpice stock (ECF 72). On April 15, 2013 Hand filed three motions to compel discovery responses from Bukstel and VitaminSpice (ECF 77, 78, and 79), and on April 16, 2013 Bukstel filed three motions to compel discovery from Hand and plaintiffs (ECF 81, 82, 82). On April 23, 2013, the parties filed a joint discovery plan that allowed 120 days to complete all discovery and requested that the Court schedule a settlement conference (ECF 92). One week later on April 30, 2013, the Court entered an order that, inter alia, required the parties to meet and confer regarding the pending motions to compel, required Hand to be available for a deposition, ordered that discovery served on Hand have full force and validity, and required Hand to object with precision to any pending discovery requests and to produce requested documents within 14 days (ECF 96). Then, on May 23, 2013, after the parties participated in a settlement conference mediated by Magistrate Judge Strawbridge, the parties agreed to settle all of their claims and the Court entered an order dismissing this action with prejudice (ECF 102).

**III.    The Present Rule 60 Motion**

On September 11, 2014, more than a year after the Court dismissed this action, Bukstel filed, pro se, a "Motion for 60(B)(3) Fraud on the Court" (ECF 106). After the Court ordered Bukstel to submit supplemental briefing regarding the timeliness of his motion (ECF 107), Bukstel filed a "Brief in Support of 60(B)(3) Fraud on the Court Motion" on October 20, 2014 (ECF 108). On November 3, 2014 plaintiffs and Hand each filed a response in opposition to Bukstel's motion (ECF 110 and 111). The next day Bukstel filed two replies (ECF 112 and 113).

Broadly speaking, Bukstel's motion alleges that Hand and plaintiffs have committed an extensive fraud, the contours of which follow the allegations in Bukstel's amended counterclaims. Although he does not explicitly ask for this case to be reopened or the order of dismissal set aside, Bukstel requests a hearing regarding his fraud on the court allegations, including testimony from a variety of witnesses, and seeks an order requiring Hand to produce various documents. Mot. for 60(B)(3) Fraud at 15 (ECF 106). In a declaration attached to his motion, he also seeks appointment of counsel to file an appeal. Decl. of Edward Bukstel ¶ 41 (ECF 106 at 20). In his reply brief, Bukstel also requests, in the alternative, "an expedited hearing for consideration of the filing of an independent action for fraud on the court." Bukstel Response Br. at 19 (ECF 113).

The arguments in Bukstel's motion, supplemental brief, and reply briefs are based on two general categories of evidence: (1) newly discovered documents that Bukstel alleges would have changed the outcome of the settlement conference, and (2) alleged inconsistencies among the statements in plaintiffs' complaint and filings, Hands' declarations and filings, and various public records that allegedly support Bukstel's counterclaims and disprove plaintiffs' fraud claims against Bukstel.

In the first category of newly discovered documents, Bukstel focuses especially on a brokerage account statement from Scottsdale Capital Advisors that shows sales of a total of 3,036,680 shares of VitaminSpice stock on November 2 and 3, 2010. Ex. to Mot. for 60(B)(3) Fraud (ECF 106 at 22-23). The statement indicates that the account belongs to "Bioclean Products Attn Doris Urueta Toro." Id. Bukstel obtained the statement from Scottsdale Capital Advisors as a result of third-party discovery conducted prior to the May 2013 settlement conference, although he asserts that he did not receive the security code needed to access the file at that time and was unable to view it until sometime later. Br. in Supp. of Mot. at 6 (ECF 108). Bukstel also cites to an email dated January 4, 2010 from Hand's assistant to Scottsdale Capital Advisors that allegedly demonstrates Hand's control over the Bioclean Products account. Mot. for 60(B)(3) Fraud at 3. He also refers to numerous printouts from the websites of the Nevada and Wyoming Secretaries of State that allegedly show Hand's involvement with Bioclean Products, Advanced Multilevel Concepts, Able Direct Marketing, Esthetics World, and International Business Development. Id. at 3, 7-8, 10-12. Other documents underlying the motion include: (a) emails between Bukstel and Hand from 2009 that allegedly show Hand acting as counsel for VitaminSpice, (b) a January 2013 slip opinion from the District of Nevada that concluded that a company (not involved in this case) "was a shell corporation, used by Hand to conduct business on behalf of himself and his other companies,"[3] and (c) bank statements showing transactions from Hand's client trust account that allegedly correspond with Hand's actions in the "pump-and-dump" schemes. Id. at 7, 11, 13.

In the second category of inconsistencies in plaintiffs' and Hand's filings, Bukstel repeatedly alleges that plaintiffs and Hand have made misrepresentations or false statements in

---

[3] Anahuac Mgmt. v. Mazer, No. 2:09-CV-01590, 2013 WL 211080, at *3 (D. Nev. Jan. 18, 2013).

their court filings and discovery responses regarding (a) the state of incorporation of the plaintiff companies, (b) Hand's role with and control over the plaintiff companies, (c) the debts owed to the plaintiff companies by VitaminSpice's corporate predecessor Qualsec, and (d) Hand's role with VitaminSpice. Id. at 8-9, 12, 14; Br. in Supp. of Mot. at 4-5, 7 (ECF 108); Bukstel's Response Br. at 7-13, 15, 17-18 (ECF 113). Bukstel's motion and supporting briefs also reiterate many of the allegations of securities fraud that formed the basis for Bukstel's amended counterclaims.

## IV.    Legal Standard and Jurisdiction

When considering the filings of a pro se party like Bukstel, the Court must "liberally construe his pleadings" and "apply the applicable law, irrespective of whether [he] has mentioned it by name." Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003). The title of Bukstel's motion refers to Rule 60(b)(3) but its legal arguments address "fraud on the court" under Rule 60(d)(3). In addition, a primary basis for his motion is newly discovered evidence, which implicates Rule 60(b)(2). As discussed further below, the Court will interpret Bukstel's motion liberally and consider its merits under Rules 60(b)(2), 60(b)(3), 60(d)(1), and 60(d)(3) to give him every possibility of asserting a viable claim.[4, 5]

---

[4] In deciding how to construe Bukstel's motion, the Court also notes that several circuits and leading commentators have concluded that "where the adverse party is not prejudiced, an independent action for relief [under Rule 60(d)] may be treated as a 60(b) motion, and conversely, a 60(b) motion may be treated as the institution of an independent action." Mitchell v. Rees, 651 F.3d 593, 595 (6th Cir. 2011) (quoting Bankers Mortg. Co. v. United States, 423 F.2d 73, 81 n. 7 (5th Cir. 1970)) (alterations omitted); see also United States v. Buck, 281 F.3d 1336, 1342 (10th Cir. 2002) (holding that when considering a Rule 60(b) motion "[t]he substance of the plea should control, not the label. We should construe the [misstyled] motion either as an independent action . . . [or] as a pleading invoking the court's inherent power to grant relief for fraud upon the court"); Weldon v. United States, 70 F.3d 1, 5 (2d Cir. 1995) ("[A]lthough it is labeled a Rule 60(b) motion, we need not treat [plaintiff's] request for relief from judgment as such a motion since the court had jurisdiction to consider it an independent action in equity."); Indian Head Nat. Bank of Nashua v. Brunelle, 689 F.2d 245, 250 (1st Cir. 1982) (noting that

Rule 60(b) allows the Court to "relieve a party . . . from a final judgment, order, or proceeding for . . . (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); [and for] (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(2)-(3). A motion brought under Rule 60(b) for either of these reasons "must be made within a reasonable time" and "no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1). However, Rule 60 "does not limit a court's power to: (1) entertain an independent action to relieve a party from a judgment, order, or proceeding . . . or (3) set aside a judgment for fraud on the court." Fed. R. Civ. P. 60(d)(1), (3).

"The general purpose of Rule 60(b) is to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice must be done." Coltec Indus., Inc. v. Hobgood, 280 F.3d 262, 271 (3d Cir. 2002) (alterations and internal quotation marks omitted). Relief under a Rule 60(b) motion is "extraordinary relief which should be granted only where extraordinary justifying circumstances are present." Bohus v. Beloff, 950 F.2d 919, 930

---

there are "procedural differences in the motion practice and the independent action, but these have not been found to raise due process considerations which would bar treating a Rule 60(b) motion as an independent action"); Wright & Miller, 11 Fed. Prac. & Proc. Civ. § 2868 (3d ed. 2014) (under Rule 60 "[a] motion may be treated as an independent action or vice versa as is appropriate"); 12 Moore's Fed. Prac. Civ. § 60.82(3) (2014) ("A complaint for equitable relief may be construed as [a] Rule 60(b) motion and vice versa.").

[5] In his final reply brief, Bukstel also cites to Rule 60(b)(6), which allows a party to file a motion seeking relief from a judgment for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Bukstel argues that "fabrication of evidence" could give rise to a claim under either Rule 60(b)(3) or Rule 60(b)(6). Bukstel Response Br. at 3 (ECF 113). The Court concludes that Bukstel's allegations of fraudulent conduct and newly discovered evidence fall under Rule 60(b)(2) and 60(b)(3) and "the availability of relief under those subsections renders subsection (b)(6) unavailable to him here." S.E.C. v. Fin. Warfare Club, Inc., 425 F. App'x 85, 87 (3d Cir. 2011) (per curiam); Stradley v. Cortez, 518 F.2d 488, 494 (3rd Cir. 1975) (holding that a Rule 60(b)(6) motion can evade the time bars of Rule 60(b)(1)-(3) only if "the reason for the relief sought under [Rule] 60(b)(6) is not embraced within the various provision of [Rule] 60(b)(1)-(5).").

(3d Cir. 1991). A Rule 60(b) motion "is directed to the sound discretion of the trial court," <u>Pierce Assocs., Inc. v. Nemours Found.</u>, 865 F.2d 530, 548 (3d Cir. 1988), but "[o]ne who seeks such extraordinary relief from a final judgment bears a heavy burden," <u>Plisco v. Union R.R. Co.</u>, 379 F.2d 15, 17 (3d Cir. 1967).

Although Bukstel is seeking relief from dismissal following a settlement agreement rather than relief from a litigated judgment, the Court perceives "no difference in the quality of proof required for relief from a settlement agreement and that required for relief from a judgment" because "[b]oth involve the important element of finality in the disposition of litigation." <u>Bandai Am. Inc. v. Bally Midway Mfg. Co.</u>, 775 F.2d 70, 73 (3d Cir. 1985).

The Third Circuit has held that in an independent action for fraud on the court brought under Rule 60(d),[6] a district court has "jurisdiction supplemental to its exercise of jurisdiction over the original claim[s]" in the litigation. <u>Herring v. United States</u>, 424 F.3d 384, 389 (3d Cir. 2005). The Court accordingly concludes that it has supplemental jurisdiction to consider Bukstel's motion to the extent it is construed as an attempt to initiate an independent action to obtain relief from judgment under Rule 60(d)(1) or to assert fraud on the court under Rule 60(d)(3).

The Court also has jurisdiction over Bukstel's motion to the extent it is filed under Rule 60(b)(2)-(3), at least to determine the timeliness of the motion. Asserting a lack of jurisdiction, some courts in this district have denied relief or declined to consider a Rule 60(b)(3) motion

---

[6] At the time of the <u>Herring</u> decision, Rule 60(d) was known as the "savings clause" of Rule 60(b). <u>See</u> <u>Herring</u>, 424 F.3d at 389. The provisions in Rule 60(c) and 60(d) were taken out of subsection 60(b) and moved into their own subsections by the non-substantive 2007 amendments to the Federal Rules of Civil Procedure. <u>See</u> Fed. R. Civ. P. 60 advisory comm. note; <u>United States v. Baker</u>, 718 F.3d 1204, 1206 (10th Cir. 2013) ("Before December 1, 2007, when the rule was amended to add subsection (d)(3), substantively identical savings-clause language regarding fraud-on-the-court claims was included in Rule 60(b).").

when the motion was filed after the time limit prescribed by Rule 60(c)(1). E.g., McCollister v. Cameron, No. 11-525, 2014 WL 4055821, at *3 (E.D. Pa. Aug. 14, 2014); Douris v. Cnty. of Bucks, No. 99-3357, 2003 WL 403126, at *2 (E.D. Pa. Feb. 14, 2003). However, the Third Circuit has stated that "any time a district court enters a judgment, even one dismissing a case by stipulation of the parties, it retains, by virtue of Rule 60(b), jurisdiction to entertain a later motion to vacate the judgment on the grounds specified in the rule." Sawka v. Healtheast, Inc., 989 F.2d 138, 140 (3d Cir. 1993) (alterations and internal quotation marks omitted); see also 12 Moore's Fed. Prac. Civ. § 60.61 (2014) ("It has been long established that no independent federal jurisdictional basis is needed to support a Rule 60(b) motion proceeding. A Rule 60(b) motion is considered a continuation of the original proceeding."). Moreover, "a federal court always has jurisdiction to determine its own jurisdiction." White-Squire v. U.S. Postal Serv., 592 F.3d 453, 456 (3d Cir. 2010). Thus, without deciding whether the time limits in Rule 60(c) are jurisdictional, the Court concludes that it has jurisdiction to consider Bukstel's motion under Rule 60(b), at least to determine the threshold question of whether the motion complies with Rule 60(c)(1).

**V.   Discussion**

    A.   Bukstel's Motion, if Construed as a Rule 60(b) motion, is Untimely under Rule 60(c)(1)

As a motion seeking relief from judgment under Rule 60(b)(2) or (b)(3), Bukstel's motion is not timely. The order dismissing this case with prejudice was entered on May 23, 2013 (ECF 102) and Bukstel's motion was not filed until September 11, 2014, which is more than a year after the order was entered. For this reason, to the extent it is construed as a motion under Rule 60(b)(2) or (b)(3), Bukstel's motion must be denied. See Richards v. Centre Cnty. Transp. Auth., 540 Fed. App'x 83, 84-85 (3d Cir. 2013) (affirming denial of motion brought under Rules

60(b)(2) and 60(b)(3) on the basis that it was untimely under Rule 60(c)(1) because the motion

was filed three years after judgment was entered).

    B.    <u>Bukstel's Allegations Do Not Meet the Requirements to Sustain an Independent Action for Relief From Judgment under Rule 60(d)(1)</u>

Next, the Court considers whether Bukstel's motion sets forth sufficient grounds to

initiate an independent action attacking the judgment under Rule 60(d)(1) and concludes that it

does not.

The Third Circuit has held that the elements of a cause of action for relief from a

judgment on the ground of fraud "in an independent action [under Rule 60(d)(1)] are not

different from those elements in a Rule 60(b)(3) motion." <u>Averbach v. Rival Mfg. Co.</u>, 809 F.2d

1016, 1022-23 (3d Cir. 1987); <u>see</u> 12 Moore's Fed. Prac. Civ. § 60.81(1)(b)(iii) (2014) (noting

that the Third Circuit's approach permits broader fraud relief in independent actions than other

circuits).[7] Likewise, an independent action under Rule 60(d)(1) based on newly discovered

evidence must at least meet the requirements for a motion under Rule 60(b)(2). <u>Crowley v.</u>

---

[7] More recently, in <u>United States v. Beggerly</u>, the Supreme Court suggested that the standard for an independent action for relief from a judgment might be higher than for a Rule 60(b)(3) motion. 524 U.S. 38, 46 (1998). <u>Beggerly</u> concerned an independent action to set aside the settlement agreement in an underlying quiet title action on the basis that the government had "failed to 'thoroughly search its records and make full disclosure to the Court'" regarding a land grant from 1781. <u>Id.</u> at 39-41, 47. The court noted that

    [i]f relief may be obtained through an independent action in a case such as this, where the most that may be charged against the Government is a failure to furnish relevant information that would at best form the basis for a Rule 60(b)(3) motion, the strict 1-year time limit on such motions would be set at naught. Independent actions must, if Rule 60(b) is to be interpreted as a coherent whole, be reserved for those cases of 'injustices which, in certain instances, are deemed sufficiently gross to demand a departure' from rigid adherence to the doctrine of res judicata.

<u>Id.</u> at 46. The Supreme Court held that allowing the judgment to stand "would work no 'grave miscarriage of justice,'" and thus there was insufficient justification to reopen the underlying judgment. <u>Id.</u> at 47. The Court need not decide whether <u>Beggerly</u> requires that a higher standard apply when Bukstel's motion is construed as an independent action under Rule 60(d)(1) because, as explained further below, Bukstel has not even shown a right to relief under the standards applicable to a Rule 60(b)(3) motion.

Cooperstein, No. 95-CV-194, 1996 WL 524101, at *1 (E.D. Pa. Sept. 11, 1996); 12 Moore's

Fed. Prac. Civ. § 60.81(4) (2014) (noting that some courts require even more justification for an

independent action than is required for Rule 60(b)(2) motion). Therefore, to determine whether

Bukstel can meet his burden to sustain a Rule 60(d)(1) independent action, the Court will

consider his allegations against the standards for motions under Rule 60(b)(2) and 60(b)(3). This

analysis also serves as a determination of whether Bukstel's motion could succeed under Rule

60(b) even if it were not time-barred.

1.   Bukstel's Motion Does Not Satisfy the Requirements for Relief under
     Rule 60(b)(2)

"Under Rule 60(b)(2), the term 'newly discovered evidence' refers to 'evidence of facts

in existence at the time of trial of which the aggrieved party was excusably ignorant.'" Bohus v.

Beloff, 950 F.2d 919, 930 (3d Cir. 1991). "The evidence must have been discovered after trial

and the failure to learn must not have been caused by a lack of diligence. The evidence must be

material to the issues involved, yet not merely cumulative or impeaching and must be of such a

nature that it would probably change the outcome." Stridiron v. Stridiron, 698 F.2d 204, 207 (3d

Cir. 1983). "The movant under Rule 60(b) 'bears a heavy burden,' . . . which requires 'more than

a showing of the potential significance of the new evidence.'" Bohus, 950 F.2d at 930 (citation

omitted).

The new evidence cited by Bukstel does not satisfy Rule 60(b)(2)'s requirements because

Bukstel has not identified any "evidence of facts in existence at the time of [settlement] of which

[he] was excusably ignorant." Bohus, 950 F.2d at 930 (internal quotation marks omitted). To the

contrary, Bukstel's failure to learn of the evidence before agreeing to a settlement was due to his

own lack of diligence. Bukstel's motion relies principally on documents that he obtained from

Scottsdale Capital Advisors through third-party discovery that occurred prior to the settlement

12

conference. Although Bukstel maintains that he did not receive the security code to view these documents until an unspecified later date, he has not shown any meritorious reason why he could not have requested the security code and reviewed these documents before agreeing to settle his claims.

Likewise, incorporation documents from the Nevada and Wyoming Secretaries of State were available to Bukstel prior to the settlement conference if only he had looked for them. And documents such as emails between Bukstel and Hand were clearly within Bukstel's knowledge and possession at the time he chose to settle this case. His admitted failure to review these materials before agreeing to settle is not excused by Bukstel's assertions that, at the time, he was heavily involved in defending an involuntary bankruptcy petition and prioritized preparing for the settlement conference instead of reviewing discovery materials, see Br. in Supp. of Mot. at 6 (ECF 108). Preparing for the settlement conference presumably would have included reviewing precisely these types of documents and, even if Bukstel ran out of time, nothing prevented him from refusing to settle until he had finished reviewing all the relevant documents. These factual circumstances preclude Bukstel from asserting a claim under the standards applicable to Rule 60(b)(2) motions.

As an additional ground for denying relief under Rule 60(b)(2), Bukstel fails to show that the "new" evidence that he cites is "not merely cumulative or impeaching" or that "it would probably change the outcome" of the settlement conference. Stridiron, 698 F.2d at 207. The overall thrust of Bukstel's motion and briefs is that the allegations of fraud in his amended counterclaims were correct and he now has additional documents to buttress his claims. But Bukstel first raised those claims long before the settlement conference and supported them with enough factual allegations to survive a motion to dismiss. See Am. Countercl. ¶¶ 3-7, 10-11, 13-

13

26, 38, 64-75 (ECF 47); Memo. and Order Denying Mot. to Dismiss Am. Countercl. (ECF 67

and 68). Most or all of Bukstel's "new" evidence, including the incorporation documents from

the Nevada and Wyoming Secretaries of State and the Scottsdale Capital Advisors documents, is

evidence that would be used to impeach Hand, or that adds detail to the counterclaims Bukstel

had asserted regarding Hand's alleged corporate alter egos and alleged "pump-and-dump"

schemes.

Bukstel's lack of knowledge of these particular documents did not prevent him from

asserting his counterclaims. And with discovery ongoing, Bukstel should have expected to

uncover additional evidence related to his counterclaims if he refused to settle and pressed ahead

with discovery. Under these circumstances, Bukstel has not met his burden of showing that

knowledge of a handful of additional documents "would probably [have] change[d] the

outcome" of the settlement conference. Stridiron, 698 F.2d at 207. For all of these reasons,

Bukstel does not meet the "heavy burden" required to prevail on a motion under Rule 60(b)(2).

See Bohus, 950 F.2d at 930.

> 2.     Bukstel's Motion Does Not Satisfy the Requirements for Relief under
>         Rule 60(b)(3)

The Court now turns to a consideration of Bukstel's motion under Rule 60(b)(3). To

prevail under Rule 60(b)(3) "the movant must establish that the adverse party engaged in fraud

or other misconduct, and that this conduct prevented the moving party from fully and fairly

presenting his case." Stridiron, 698 F.2d at 207. "Failure to disclose or produce evidence

requested in discovery can constitute Rule 60(b)(3) misconduct," id., but the Third Circuit has

"not state[d] . . . that every failure to produce discovery qualifies as Rule 60(b)(3) misconduct,"

Floorgraphics, Inc. v. News Am. Mktg. In-Store Servs., Inc., 434 F. App'x 109, 112 (3rd Cir.

2011). "In order to sustain the burden of proving fraud and misrepresentation under Rule

60(b)(3), the evidence must be clear and convincing." <u>Brown v. Pennsylvania R.R. Co.</u>, 282 F.2d 522, 527 (3d Cir. 1960).

Bukstel argues that plaintiffs and Hand made false allegations in their complaint against him, gave misleading answers to his counterclaims, and responded to his discovery requests in an untimely and inaccurate matter, all of which prevented him from knowing the true strength of his counterclaims and defenses at the settlement conference. <u>See</u> Br. in Supp. of Mot. at 3-5 (ECF 108). In addition, he claims that he was coerced into settling by the prospect of facing a nearly $4 million judgment if plaintiffs prevailed on their UCC claims against him. Mot. for 60(B)(3) Fraud at 6 (ECF 106); Br. in Supp. of Mot. at 3 (ECF 108). Thus, Bukstel argues, he only agreed to settle because opposing parties' alleged fraud and misconduct deprived him of knowledge of relevant evidence during the settlement conference.

These arguments are insufficient to meet Bukstel's burden for obtaining relief under Rule 60(b)(3). Specifically, they fail to show that any other party's conduct prevented him "from fully and fairly presenting his case." <u>Stridiron</u>, 698 F.2d at 207. The essence of Bukstel's argument is that he was right all along and that he would have had more documents to buttress his counterclaims and defenses at the settlement conference if opposing parties had been more forthcoming in discovery and had not filed their allegedly inaccurate complaint against him. However, at the time of the May 2013 settlement conference, the close of discovery was not for several more months.  <u>See</u> Joint Discovery Plan ¶ 3 (ECF 92). Bukstel had filed three motions to compel discovery that were still pending at the time of settlement (ECF 81, 82, and 83). He had obtained a court order (ECF 96) requiring Hand to produce documents, respond to discovery requests, and make himself available for a deposition. Bukstel could have sought further relief from the Court if he believed that there were additional discovery violations. Instead, with full

knowledge that discovery was ongoing, that additional evidence was likely be disclosed, and that Hand—a critical witness—had not yet been deposed, Bukstel chose to cut off the process and settle his claims based on whatever information was available to him at the time. He did not request to postpone the settlement and has not given any reasons why he could not have delayed agreeing to a settlement until he had at least reviewed the documents produced to him in discovery. Under these circumstances, the Court cannot conclude that another party's conduct "prevented [Bukstel] from fully and fairly presenting his case." Stridiron, 698 F.2d at 207. Instead, to the extent there was any interference with Bukstel's ability to fully and fairly present his case it was attributable to Bukstel's decision to settle his claims and cut short the discovery process.

Contrary to Bukstel's arguments, he is not similarly situated to the plaintiff in Averbach. See Br. in Supp. of Mot., at 4 (ECF 108). In Averbach, the plaintiff sought damages for a fire that she alleged was caused by her malfunctioning electric can opener. 809 F.2d at 1017-18. During discovery, she received allegedly inaccurate interrogatory responses regarding the prior history of fires caused by the defendant's can openers. Id. These "grossly false" responses prevented her from presenting evidence about the previous fires when her case went to a jury trial. Id. A similar factual scenario occurred in Stridiron, in which the plaintiff in a divorce case provided false answers to interrogatories and document requests regarding the existence of his prior marriage. 698 F.2d at 206-207. The case was called to trial and, although the parties ultimately stipulated to the terms of their divorce, the plaintiff's "serious misrepresentation of a material matter" in his discovery responses "effectively foreclosed defendant from presenting her claim for annulment at trial." Id. at 207. The facts and procedural histories in Averbach and Stridiron are not analogous to Bukstel's situation. In both cases, discovery was complete and the

16

case went to trial or settled upon being called for trial. These procedural postures made the discovery misconduct into acts that prevented the opposing parties from fully presenting their cases. Neither <u>Averbach</u> nor <u>Stridiron</u> speaks directly to Bukstel's situation, in which he chose to settle his claims in reliance on incomplete information from an ongoing discovery process.[8]

Instead, Bukstel's circumstances are much more analogous to those of plaintiff Bandai in <u>Bandai America Inc. v. Bally Midway Mfg. Co.</u>, 775 F.2d 70 (3d Cir. 1985). In that case, Bandai agreed to settle its claims and dismiss the underlying copyright and trademark litigation. <u>Id.</u> at 71-72, 74. Bandai later filed an independent action seeking relief from the settlement and judgment on the ground of fraud. <u>Id.</u> at 72. Bandai argued that the defendant's representations and omissions during discovery had prevented it from exploring a possible defense to the infringement claims in the underlying action. <u>Id.</u> at 73. The Third Circuit concluded that, in contrast to the movant in <u>Stridiron</u>, Bandai's proof was "lacking" in part because there was an "indication of neglect on the part of [Bandai] in pursuing the facts." <u>Id.</u> at 73. Specifically, "Bandai's tendered proofs d[id] not establish that [defendant's] fraud prevented it from obtaining the facts" related to its possible defense. <u>Id.</u> at 74. Instead, Bandai "chose to settle the first action." <u>Id.</u> In doing so it "surrendered the right to pursue additional discovery" and the record did "not support the inference that Bandai's decision to relinquish further discovery was causally related to any alleged misrepresentation by counsel for [defendant]." <u>Id.</u>

Here, Bukstel has similarly failed to show that his choice to relinquish further discovery and abandon his counterclaims was caused by any action, whether fraudulent or not, by Hand or

---

[8] The Court does not intend to imply that Bukstel could only assert a Rule 60(b)(3) claim if he had taken his case all the way to trial. Under a different set of facts, a Rule 60(b)(3) moving party that settled its claims before the close of discovery might still be able to show that an opposing party's fraud or misconduct prevented the movant from fully and fairly presenting its case at a settlement conference, but that situation is not before the Court.

the plaintiffs. For example, Bukstel does not show that any party misrepresented that discovery was complete or fraudulently led him to believe that further discovery would be unfruitful. <u>See Floorgraphics</u>, 434 F. App'x at 112 n.3 (similarly distinguishing <u>Averbach</u> and <u>Stridiron</u> because defendant's objections to plaintiff's discovery request had not "led the propounding party to believe that there was nothing else that might be responsive to the request"). Instead, based on the totality of the circumstances[9] and knowing that he had incomplete information, Bukstel chose not to pursue his allegations of fraud against Hand and plaintiffs and forfeited his right to discover additional evidence that might support those claims.

Having concluded for these reasons that Bukstel is not entitled to relief under Rule 60(b)(3), it is unnecessary to determine whether Bukstel's motion establishes by clear and convincing evidence that any other party engaged in fraud or other misconduct. The Court does not express any conclusions on that issue.

C.       <u>Bukstel's Motion Does Not Show a Fraud on the Court</u>

Finally, the Court considers Bukstel's motion under Rule 60(d)(3), which preserves the Court's power to "set aside a judgment for fraud on the court." Fed. R. Civ. P. 60(d)(3). The "necessarily demanding standard for proof of fraud upon the court" requires the moving party to show "(1) an intentional fraud; (2) by an officer of the court; (3) which is directed at the court itself; and (4) in fact deceives the court." <u>Herring</u>, 424 F.3d at 386. "[A] determination of fraud on the court may be justified only by the most egregious misconduct directed to the court itself,

---

[9] The Court notes that the parties' settlement agreement contains several provisions committing the parties to seek to dismiss actions pending in other courts. Pls.' Opp. to Mot. for 60(B)(3) Fraud, Ex. A (ECF 111-1 at 1-3). There were also three pending motions to compel discovery from Bukstel (ECF 77, 78, and 79) and Hand alleges that Bukstel and VitaminSpice had not yet provided any response to his discovery requests. Hand's Response Br. at 5 (ECF 110). Thus, it appears that the settlement may have been motivated, at least in part, by a broader set of considerations.

and [] it must be supported by clear, unequivocal and convincing evidence." <u>Id.</u> at 386-87
(internal quotation marks omitted). For example, such "egregious misconduct" would include
"bribery of a judge or jury or fabrication of evidence by counsel" but does not include "perjury
by a witness." <u>Id.</u> at 390. Given that "perjured testimony does not rise to the level of fraud upon
the court," a court in this district has further reasoned that "it cannot be said that false answers to
interrogatories should be given such status." <u>Petry v. Gen. Motors Corp., Chevrolet Div.</u>, 62
F.R.D. 357, 361 (E.D. Pa. 1974).

   To satisfy the requirement that a fraud upon the court be directed at the court itself,
Bukstel's arguments necessarily focus on alleged fraud related to the settlement conference
conducted by Magistrate Judge Strawbridge. Bukstel argues that the Court "relied on the
complaint, signed pleadings, and filings submitted in this case" and that the Court "was
successfully deceived by the fabricated complaint and pleadings before it." Mot. for 60(B)(3)
Fraud at 3, 6, 9 (ECF 106). He claims that "the level of detail and persuasive manner of the false
allegations in the complaint against Bukstel could not convince this court and USMJ Strawbridge
that Bukstel was innocent of securities fraud." <u>Id.</u> at 6. Bukstel further argues that during the
settlement conference Magistrate Judge Strawbridge "presented a balanced case based upon
fraudulent information," which included a discussion of "the Securities Fraud allegations against
[Bukstel] that totaled nearly $4 million" and the possibility that Bukstel might face an offset of
that magnitude even if he prevailed on his counterclaims at trial. Br. in Supp. of Mot. at 3, 10
(ECF 108); Bukstel Response Br. at 4 (ECF 113). He alleges that Magistrate Judge
Strawbridge's presentation "forced Bukstel to accept a settlement agreement." Br. in Supp. of
Mot. at 10 (ECF 108). Armed with the new documents cited in his motion, Bukstel asserts that

"[t]he offset is now gone," id. at 11, although he does not explain exactly why the offset would be gone.[10]

The documents cited in Bukstel's motion and briefs do not show a fraud upon the court by anything approaching clear, unequivocal, and convincing evidence. Bukstel essentially argues that his counterclaims alleging fraud were correct, that the Court (through Magistrate Judge Strawbridge) was deceived by plaintiffs' and Hand's entire case, and that Bukstel should have a fresh opportunity to present his defenses and counterclaims. There are several deficiencies in Bukstel's position. First, as other courts have noted, "the magistrate judge in a settlement conference functions not as 'the Court,' but as a mediator, and settlement conferences are not adjudicatory in nature." Lee v. Grand Sichuan E. (N.Y.) Inc., No. 12-cv-8652, 2014 WL 199512, at *4 (S.D.N.Y. Jan. 17, 2014) (internal quotation marks omitted). Neither the Court nor Magistrate Judge Strawbridge has adjudicated whether any party in this case was guilty or innocent of securities fraud, and that determination was not the purpose of the settlement conference.

Second, Bukstel makes various allegations regarding the settlement conferences with Magistrate Judge Strawbridge. These allegations ignore the fact that settlement conferences are not recorded, are confidential, and are designed to assist the parties in settling litigation. Even assuming arguendo that Bukstel's allegations have merit, they do not support his request. It is normal that a Magistrate Judge, acting as a neutral mediator, will have summarized the parties'

---

[10] Bukstel's logic appears to be that he now has additional evidence to support his allegations that the plaintiff companies are "alter-egos" of Hand and that as Hand's "alter-egos" they either obtained their VitaminSpice shares fraudulently or received permission to trade their shares fraudulently. Thus, Bukstel appears to believe that if he were to prevail on his underlying counterclaims of fraud, the plaintiffs might not be entitled to damages for Bukstel's alleged interference with their ability to sell their VitaminSpice shares because they may have had no right to own and/or trade the stock in the first place.

sharply contrasting factual allegations and set out the potential implications if they were proven at trial. This does not show that the Magistrate Judge, much less the Court, was necessarily deceived by any party's claims. It is certainly possible that the relative strength of the various parties' claims and defenses was influenced by the documents that the parties made available during the settlement conference. But, as discussed extensively above, Bukstel's lack of knowledge of the documents cited in his motion is attributable to his failure to review discovery materials, not to intentional fraud on the part of plaintiffs or Hand.

Third, even assuming arguendo that Magistrate Judge Strawbridge was acting as "the court," there is no indication that he was deceived by intentionally fraudulent conduct attributable to officers of the court. As a threshold matter, false statements made by parties to the litigation during a settlement conference do not rise to the level of a fraud on the court. This is also true as to court proceedings. "[P]erjury by a witness is not enough to constitute fraud on the court." Herring, 424 F.3d at 390. Instead, perjury "is a common hazard of the adversary process with which litigants are equipped to deal through discovery and cross-examination, and, where warranted, motion for relief from judgment to the presiding court." Id. (quoting Geo. P. Reintjes Co. v. Riley Stoker Corp., 71 F.3d 44, 49 (1st Cir. 1995)). To the extent that Bukstel's motion relies on allegedly false statements that are attributable to plaintiffs, rather than to their attorneys, those statements cannot be the basis for finding a fraud upon the court.

Even to the extent that Bukstel relies on allegedly fraudulent conduct by plaintiffs' attorneys and Hand, he has not met the demanding burden to prove a fraud on the court.[11] The Third Circuit recognizes that "an attorney's deliberate attempt to mislead the court may be such a

---

[11] For the sake of this analysis, the Court assumes, without deciding, that pro se third-party defendant Hand was acting as an officer of the court. At least one other court has previously concluded that "when an attorney represents himself in a pro se capacity, he does not lose the aura of an officer of the court." In re Heard, 106 B.R. 481, 484 (Bankr. N.D. Ohio 1989).

fraud as will permit the reopening of a judgment." <u>Bandai Am.</u>, 775 F.2d at 73 (emphasis added). For example, in the seminal case of <u>Hazel-Atlas Glass Co. v. Hartford-Empire Co.</u> the Supreme Court confronted "a deliberately planned and carefully executed scheme to defraud not only the Patent Office but the Circuit Court of Appeals." 322 U.S. 238, 245 (1944) <u>questioned on other grounds by</u> <u>Standard Oil Co. of Cal. v. United States</u>, 429 U.S. 17, 18 & n.2 (1976). The court held that Hazel-Atlas was entitled to relief because "indisputable proof" revealed that Hartford had prevailed in the underlying patent litigation in part because Hartford and its attorneys had written an article that supported its patent claims, fraudulently published it as the purported work of a disinterested expert, caused the Patent Office and the Court of Appeals to rely on the article in upholding Hartford's patent, and then undertaken substantial efforts to hide the fraud from Hazel-Atlas's investigators. <u>Id.</u> at 240-43, 250-51.

More recently, in <u>Herring</u>, the Third Circuit considered whether a fraud on the court had been proven based on allegedly fraudulent statements regarding the government's claims of privilege in sworn affidavits submitted in the underlying tort litigation by government attorneys. 424 F.3d at 391. The Third Circuit agreed that, in the original litigation, "the Supreme Court depended upon [the attorneys'] 'experience, expertise and truthfulness' in its decision to reverse and remand" and noted that plaintiffs' claim alleged "a particularly serious type of perjury because of the high degree of faith the Court placed in the truth of [the attorneys'] representations." <u>Id.</u> at 390-91. The Court reiterated that "proof of perjury is not enough to establish a fraud upon the court," but in <u>Herring</u> it was a "necessary element" that needed to be met before considering "the additional rigors of proving fraud upon the court." <u>Id.</u> at 391. Ultimately, the Third Circuit concluded that the <u>Herring</u> plaintiffs had failed to make out a claim for perjury, which also defeated their claim for fraud upon the court. <u>Id.</u> at 391-92.

22

Bukstel's allegations are not cut from the same cloth as the fraud that was found in Hazel-Atlas or even the fraud that was alleged in Herring. Most of the allegedly false statements that Bukstel relies upon are statements in pleadings or in discovery responses that were signed by an attorney. In contrast to the sworn affidavits of government attorneys in Herring, contested factual allegations in a complaint or answer do not receive a "high degree of faith" from courts adjudicating adversarial matters. See F.D.I.C. v. Deglau, 207 F.3d 153, 172 (3d Cir. 2000) (noting that allegations in a complaint are "merely allegations and not evidence"). Falsities in such statements may subject a party or its attorney to sanctions, but litigants are well-equipped to test the veracity of such statements through the adversarial process using such tools as discovery and cross-examination.[12] Moreover, Bukstel has not shown that Magistrate Judge Strawbridge treated such statements as anything more than the yet-to-be-proven factual allegations of antagonistic litigants.

As for allegedly fraudulent discovery responses, Bukstel cites to plaintiffs' and Hand's (a) objections to an interrogatory seeking information about plaintiffs' corporate shareholders, officers, and employees, Mot. for 60(B)(3) Fraud at 12 (ECF 106); Bukstel Response Br. at 18 (ECF 113); (b) response to an interrogatory regarding communications with brokerage firms, Br. in Supp. of Mot. at 7 (ECF 108); and (c) objections to an interrogatory seeking information about the nature of the plaintiff companies' businesses, Bukstel Response Br. at 18 (ECF 113). Although some of these interrogatories are relevant to Bukstel's counterclaims, there is no evidence that Magistrate Judge Strawbridge saw these particular responses much less that he was

---

[12] For example, a case can be dismissed as a sanction for fraud on the court if discovery reveals a pattern of perjury under oath, deceit, concealment of evidence, and attempted bribery of witnesses. See Skywark v. Isaacson, No. 96-cv-2815, 1999 WL 1489038 (S.D.N.Y. Oct. 14, 1999) aff'd, No. 96-cv-2815, 2000 WL 145465 (S.D.N.Y. Feb. 9, 2000). Bukstel could have, but did not, allege such a fraud on the court at the time of the settlement conference.

deceived by or adversely relied on them in a way that affected the outcome of the settlement conference.

Finally, Bukstel alleges that Hand committed perjury in his sworn declaration that addressed whether Hand served as VitaminSpice's counsel and as a corporate officer, or merely as its bookkeeper. Mot. for 60(B)(3) Fraud at 9 (ECF 106) (citing Decl. of Jehu Hand ¶¶ 3-4 (ECF 18)); Bukstel's Response Br. at 8, 11-12 (ECF 113) (same). Even if the Court assumes that Bukstel's allegations are accurate, there is no evidence that Magistrate Judge Strawbridge placed any faith in the truthfulness of these statements, in contrast to <u>Herring</u>, or that this declaration was a critical piece of evidence in the outcome of the case, in contrast to <u>Hazel-Atlas</u>.

Overall, Bukstel's fraud on the court arguments are an attempt to relitigate the underlying fraud claims that he agreed to settle in May 2013. The fact that a party in a fraud case, based on belated review of discovery materials, later believes that it had stronger claims and defenses and regrets its decision to settle does not establish the type of "egregious misconduct directed to the court itself" that merits relief under Rule 60(d)(3). <u>Herring</u>, 424 F.3d at 387 (internal quotation marks omitted). If Bukstel's position were correct, any party that had alleged fraud and then settled its claim before going to trial could reopen its case at any time simply by proffering additional evidence supporting its original claim. Such an interpretation would undercut the effectiveness of settlement agreements in fraud cases and seriously undermine "the very principle upon which our judicial system is based: the finality of a judgment." <u>Id.</u> at 386. Rule 60(d)(3), providing relief in "rare" and "egregious" circumstances, is not meant to be so liberally applied. <u>Id.</u> at 386-87.

D.      The Court Will Not Appoint Counsel for Bukstel

In the declaration attached to his motion, Bukstel requests that the Court appoint counsel for him. Decl. of Edward Bukstel ¶ 41 (ECF 106 at 20). Leaving aside the question of whether such a request is properly before the court (it appeared only in a declaration not in a motion), the Court declines to appoint counsel for Bukstel. Courts have not recognized "a constitutional right to counsel for civil litigants." Parham v. Johnson, 126 F.3d 454, 456 (3d Cir. 1997). Indeed, "civil litigants do not even have a statutory right to appointed counsel." Id. at 457. Courts do have discretion to appoint counsel for indigent civil litigants under 28 U.S.C. § 1915(e)(1). Id. However, in deciding to do so, a court must first determine that the litigant's claims have "some merit in fact and law," and then consider six additional factors related to the litigant's competency and the complexity of the case. Id. Bukstel has not met any of these criteria. He has not introduced any evidence to show that he qualifies to proceed in forma pauperis under 28 U.S.C. § 1915, the Court has concluded that his claims lack merit, and he has not addressed the other six factors that courts consider before deciding to appoint counsel in a civil case.

**VI.     Conclusion**

Given the importance of finality in litigation, Rule 60 allows for relief from judgments under limited circumstances and the burden to obtain such relief is high. For all of the foregoing reasons, Bukstel has not met that burden. The Court's decision not to reopen this case is not an endorsement of any of the actions alleged in Bukstel's counterclaims, assuming they are true. As set out in the Court's January 25, 2013 decision (ECF 67), Bukstel's claims adequately alleged grounds for relief in the original litigation. However, by agreeing to settle, Bukstel chose to cut short the adversarial litigation process and to forego adjudication of his claims on the merits. In so doing, he secured significant benefits for himself. He averted the risk of a multimillion dollar

judgment against himself, avoided possible discovery burdens, and obtained agreement to seek dismissal of other litigation. In hindsight Bukstel might weigh those factors differently, but his change of heart is not a sufficient justification to reopen this case.

An appropriate order follows.

O:\CIVIL 11\11-3718 Advanced Multilevel v Bukstel\11cv3718.Memo.re.MotionFor60b3Fraud.docx